[No. 17300. Department Two. January 5, 1923.]

LOUDENBACK & MILLS, *Plaintiff*, v. H. G. BOHLKE *et al.*, *Defendants.*

DAVID HARDUNG, *as Administrator, etc., Appellant*, v. WM. A. DOELLE, *as Trustee in Bankruptcy, Respondent.*[1]

BANKRUPTCY (5-1)—PREFERENCES—TRANSFER TO CREDITOR. There is a preference to a creditor, within the meaning of the bankruptcy act, where the bankrupt, having assumed a contract for the purchase of land on the instalment plan, had sold part of the land to one H. but was unable to make H. a title until $15,000 was paid to the owner of the land on payments overdue, and by agreement with all concerned, just before a petition in voluntary bankruptcy, the bankrupt assigned to H. $15,000 of insurance money to be paid to the owner; whether the same was to be applied on overdue payments, or on a cropping agreement, or an advance payment; since the owner was a creditor, and the bankrupt being an insolvent corporation at the time, the transfer was void under the trust fund doctrine.

SAME (5-1). Such a preference cannot be held valid on the ground that it was but carrying out a transaction which was undertaken long prior to the four months' period.

LIENS (1, 3)—EQUITABLE LIENS—RIGHTS AND LIABILITIES OF PURCHASER OF PROPERTY. The vendor of land has no equitable lien upon the proceeds of insurance on the apple crop, stored in a warehouse and destroyed by fire, where the contract provided that the purchaser should harvest the crop, put it in warehouse and sell it, and

[1]Reported in 211 Pac. 891.

that 75% of the net proceeds should be applied as the annual payment on the contract of purchase, there being no reservation of title to the crop.

Appeal from a judgment of the superior court for Chelan county, Grimshaw, J., entered December 31, 1921, upon findings adverse to a defendant, in an action to participate in insurance money upon a loss by fire. Affirmed.

*Freece & Pettijohn,* for appellant.

*D. A. Shiner* and *Fabian B. Dodds,* for respondent.

TOLMAN, J.—In August, 1919, J. L. Maxwell and wife, being then the owners thereof, by written contract, agreed to sell a certain tract of fifty-five acres of orchard land to H. G. Bohlke, for a stated consideration of $82,500. Five thousand dollars of the purchase price was paid in cash at the time of the execution of the contract, thirty-five thousand was to be paid on or before certain specified dates, and the balance of the purchase price was payable by the turning over to the sellers of seventy-five per cent of the net income derived from the land after the year 1919, the language of the contract on this subject being:

"The party of the second part will pick, grade and pack the apples raised on said land in a proper manner, and will deliver them at the Bohlke warehouse, and sell them at the highest obtainable price, and pay to the parties of the first part not less than seventy-five per cent (75%) of the net proceeds from the crop after the year 1919, said seventy-five per cent to be applied upon interest and principal under this contract. It is understood that the net proceeds as contemplated by this agreement shall be the amount remaining after deducting the expense of pruning, brush hauling, spraying, cultivating, irrigating, thinning, propping, picking, packing and delivering the crop raised on said premises, and no other items. Interest shall be payable annually in any event."

Twenty-five thousand dollars was paid on the thirty-five thousand dollars specific deferred payments, and the remaining ten thousand dollars was overdue and unpaid when, in January, 1920, Jacob Hardung agreed to purchase from Bohlke some fourteen acres of the orchard tract at the price of $2,000 per acre. The purchase price was paid by Hardung partly in cash and partly by notes, which have since been paid or have since passed into the hands of innocent holders for value; and it is not now contended that the situation is other than it would have been if Hardung had paid the whole purchase price in cash. Written contracts were executed on January 29, 1920, by Bohlke and wife, by which they agreed to convey the land thus purchased in two separate tracts, one to Jacob Hardung, Jr., and the other to David Hardung (sons of Jacob Hardung), upon the payment of the promissory notes evidencing the final payments which, by their terms, would be due in one year.

In May, 1920, Bohlke, with his wife joining, assigned his contract with the Maxwells to the Bohlke Fruit Company, a corporation, in which assignment it was specified that the purchase price was unpaid to the extent of $55,000 and interest, and that, "the second party (the corporation) does hereby assume and agree to pay the unpaid indebtedness of $55,000 in accordance with, and pursuant to the terms of such written agreement." The Hardung contracts were not mentioned in this assignment, but as they were afterwards also assigned to the corporation, and as the acreage was given as sufficiently less than that mentioned in the original contract to indicate that the assignment was not intended to affect them in any way, it is to be presumed that the corporation had full knowledge of the situation. The corporation appears to have gone into possession of the orchard tract, except the por-

tion sold to Hardung; at any rate, it harvested the apple crop thereon in 1920, and placed the same in its warehouse at Dryden, Washington, presumably to be dealt with according to the terms of the Maxwell contract.

In the meantime, in June, 1920, Hardung, having paid out on one of the contracts, demanded a deed from Bohlke, but was put off from time to time by the excuse that he, Bohlke, must first see and arrange with Maxwell before a deed could be given. Later Hardung demanded a deed, also, for the remaining tract, and finally Bohlke took the matter up with Maxwell, and Maxwell agreed that, upon the payment to him of $15,000, to be credited upon his contract, he would execute and deliver a deed direct to Hardung, covering the land purchased by Hardung from Bohlke.

About this time, the Bohlke Fruit Company warehouse at Dryden, in which the 1920 crop of apples was stored, was, with its contents, destroyed by fire. Insurance was carried upon the warehouse, and upon its contents. The loss was adjusted and approximately $120,000 was deposited in bank by the insurance companies for the benefit of those who were protected by the policies, or might be found to be entitled to participate. After the adjustment, but before the payment, the Bohlke Fruit Company made a written assignment of $15,000 of the insurance money to J. L. Maxwell, for the purpose of having him deed to Hardung as theretofore agreed; but Maxwell declined to execute the deed until he should actually receive the money; whereupon, all parties interested agreeing, the order or assignment for $15,000 of the insurance money was transferred by Maxwell to Hardung, and Maxwell entered into a written agreement to deed the fourteen acres of land to Hardung when he should be paid $15,000.

About this time, Maxwell asserted a claim of forfeiture under the terms of the original contract, and thereafter Bohlke and wife, and the Bohlke Fruit Company recognized such claim, by written instruments, consenting to the cancellation of the original contract and waiving all claims to the money which had been paid thereunder. In the meantime, the Bohlke Fruit Company had become seriously involved in financial difficulties; and on the day following the transfer of the $15,000 assignment to Hardung, its affairs were turned over to a committee of its creditors. Shortly thereafter, it filed a petition in voluntary bankruptcy, and was adjudged a bankrupt on April 30, 1921. This action was brought by persons claiming an interest in the money deposited by the insurance companies. Hardung was made a party defendant because of being the holder of the assignment or order for $15,000 above referred to, and he set up his claim and sought to recover that amount from the fund. The judgment of the trial court denied him recovery. Shortly thereafter, Hardung died, and an administrator of his estate having been appointed and qualified, he was substituted, and now prosecutes this appeal.

Appellant presents a number of interesting questions:

(1) The assignment of the insurance money to Hardung should be sustained because the bankruptcy act, § 62, subds. a and b, covers only those cases where the transfer is to one to whom the bankrupt is then liable. Admitting that to be a proper construction of the bankruptcy act, it appears here that the Bohlke Fruit Company had assumed and agreed to pay the unpaid portion of the purchase price of the land to Maxwell; and notwithstanding that the immediate purpose of giving him the assignment may have been to secure the deed to Hardung, the main and ultimate purpose was to pay

the debt, to that extent. In other words, by the assumption of the debt, the corporation became the debtor, and Maxwell became the creditor, and whether this payment be considered as intended to apply on what was already overdue, a payment on account of the crop provision of the contract for the year 1920, an advance payment, or, if there was a commingling of any two or all of such purposes, still it was a transfer to a then creditor, and comes within the purview of the section cited.

(2) It is contended that the evidence fails to show that the Bohlke Fruit Company was insolvent, at the time of the execution and delivery of the assignment, and fails to show that Maxwell or Hardung had reasonable cause to believe that the enforcement thereof would effect a preference. A study of the record amply satisfies us that the Fruit Company was hopelessly insolvent at and long before the time in question, and that both Maxwell and Hardung had good cause to know that fact, and that a preference would result; but, in any event, the corporation being insolvent, the transfer would be void under our trust fund doctrine, where the good or bad faith of the creditor is immaterial. *Williams v. Davidson,* 104 Wash. 315, 176 Pac. 334.

(3-4) It is next contended that, while the written assignment was made within the four-months period, the actual transaction for the carrying out of which the assignment was intended was undertaken long prior to such period, so that equity will compel a completion, or will treat as done that which ought to have been done. Without following in detail the argument of counsel upon this question, it seems to us, in the last analysis, that, if equity can compel the payment of $15,000 out of the funds available for the payment of general creditors under the facts shown here, then it

can, under like conditions, direct the payment of any other debt contracted in good faith prior to the four-months' period.

(5) Finally, it is contended that, independent of any question under the bankruptcy act, Maxwell and Hardung, as his assignee, had an equitable lien against the insurance fund because, by the terms of the contract, Maxwell had an insurable interest in, or some sort of title to the crop of 1920 which was harvested from the land and stored in the warehouse before the fire occurred.

We have already quoted the language of the contract applicable to this contention, and it is apparent therefrom that there was no reservation of title whatever; that the fruit company was authorized to put the apples in the warehouse, sell them at the highest obtainable price, deduct from the purchase price received the enumerated expenses of producing, harvesting, packing and delivering in the warehouse, and then, and then only, it was obligated to pay to Maxwell not less than seventy-five per cent of the remaining net proceeds. Clearly the net amount realized from the crop was made the measure by which to determine the amount of the annual payment, and title was not reserved or intended to be reserved as security therefor. Moreover, the record fails to show how many apples were delivered to the warehouse, or how many, if any, were actually there at the time of the fire, though one witness does attempt to estimate that there were eight to ten thousand boxes then in the warehouse, commingled with the other stock. The evidence referred to is based upon supposition rather than actual knowledge, and does not warrant such a finding as appellant desires.

Hardung's loss was occasioned by dealing with one who had no more than a defeasible title, who was, at

the time, in arrears in his payments, and whose ability to convey depended upon his ability to pay. The whole situation gave notice that one contracting with Bohlke must do so in reliance upon Bohlke's financial responsibility, and relief, if any there be, must be there sought

The judgment appealed from is affirmed.

PARKER, C. J., FULLERTON, and MAIN, JJ., concur.